Brawl argument on 6 and 3 Which Precise Nelson v. Benchak Lord of the Alms and Queen's altar Mr. Benchak Good morning, my name is Nelson Genshaft, I'm here for the Relators, and I have asked the Deputy Clerk to reserve two minutes for rebuttal. I'm here representing the Relators American Systems Consulting Inc., which I'll refer to as ASCII throughout this argument, and Cliff Gallatin. These are Relators who filed on behalf of the United States government in a False Claims Act case. The case was dismissed on a motion for summary judgment filed by the defendant, Mantek. As this court knows, it will review a dismissal of summary judgment on a de novo basis. Relators filed this False Claims Act based on misrepresentations made by Mantek in the bidding process. As stated in our briefs, there are three principal issues. Summary judgment was improper given that there were disputed issues of material facts. Two, materiality standard, the natural tendency test, as defined by this court in the 2005 A-plus home care case, was not applied correctly. And the Relators had no opportunity to oppose the motion to exclude its expert report and the testimony of its expert witness. I'm assuming the panel has a good working knowledge of the facts, so I'll briefly summarize in order to get to the arguments. You can assume we know them, frankly. You can assume we know the facts, if you like. Let me just briefly summarize, though. This is a contract for software management for the Defense Commissary Agency, otherwise known as DECA, which operates grocery stores in PXs and military bases around the world. ASCII had this contract for many years until it was re-bid in 2005. Mantek won the re-bid and took over in April of 2007. Mantek's bid was submitted in July 2005. It included key personnel and resumes of key personnel, including that of David Kendall Sperry, identified as its program manager. Before the contract was evaluated, David Kendall Sperry resigned and left Mantek's employment in early September 2005. The government, as it normally does, submitted evaluation notices, which are requests to the bidders for specific information. These evaluation notices, known as ENs, were responded to by Mantek and included change pages to their original bid. The ENs were submitted with a letter that indicated that the original bid remained unchanged, but there was no indication that David Kendall Sperry had left the employment of Mantek. This was confirmed again in a letter from early October called the BAFO letter, or the Best and Final Offer letter. Mr. Ginshift, I don't want to deprive you of the right to present your argument as you want to, but frankly you're wasting your time by talking about the facts. That's what Judge Kethledge was trying to hit. I'm very familiar with the letters, and they didn't, you know, say that the guy wasn't going to be there anymore, et cetera. Thank you. Sure. I mean, you might want to grapple with the evidence from the other side, the testimony from numerous persons involved in the evaluation process that the identity of this individual was not material. It just illustrated that the bidder was aware of the sort of level of experience that the person needed for that position and that, you know, they routinely replaced people and et cetera. All right. Thank you. Sure. As this Court knows, materiality involves mixed questions of fact and law. In criminal cases, materiality is a judge decision. If that holds true in civil False Claims Act cases, a judge will make that decision as well. In this case, the judge decided summary judgment, but it was improper under the circumstances because the judge made determinations of fact that were contested. For example, the relators presented evidence that two of the evaluators, Ms. Wright and Ms. Johnson, relied on the identification of Kendall Sperry when they gave Mantec the highest marks available for technical and management capabilities. In speaking about Kendall Sperry, Ms. Wright wrote a paragraph about his skills, saying, among other things, that he outlined and organized programs to meet or exceed DOD or Department of Defense guidelines. Ms. Wright was not talking about a myth or a placeholder. She was talking about an actual person, Mr. Kendall Sperry. You know, I think one of the questions in this case is, yes, that's in the record, but, you know, what's the import of that? It's, if you look at the record as a whole, it's not clear that that, I mean, of course they read what was there. Of course they noted what the qualifications of the identified individual were. Of course they, you know, they've also, there's also evidence that that was not determinative, but, I mean, you're looking at it, whether you're looking at it as a representative employee, representing the quality of the employee who Mantec could be expected to bring to the task, but that's put in perspective by other evidence in the record. So, I mean, I wonder if it's, I wonder if the inference to be drawn from it is the one that you suggest. Well, we certainly think that there is an inference there because both Ms. Wright and Ms. Johnson spoke highly of Kendall Sperry as a person. What they didn't know at this critical time was that Kendall Sperry wasn't there. Mantec has tried to define this case as his continued availability. That's not our argument, judges. Our argument is that at a critical time when the panel was, the evaluators were considering Mantec, they were looking at key personnel like David Kendall Sperry. They praised him and noted his credentials, and that's why they gave Mantec high marks in that particular category, the most important category being technical and management capabilities. Did Ms. Wright also testify that the resumes were, quote, only a reference to show that they have qualified personnel that are capable of doing the position? She acknowledged in her summary that that's what the team leader, Mr. Wahlberg, told them. Yes. And I guess from that perspective, the way you could look at it is they represented that there was a certain individual, and that individual is gone shortly after they made that representation. But as long as they have the capability, at least from the perspective of what some of the testimony and record is of the decision makers, it's not a misrepresentation because they had the capability, and that's what we're concerned about as decision makers is do they have the capability. And as long as they have the capability, we're not bothered by that. That seems to be what they've said and basically what they did, too, because in the end, after they got the information, they continued to approve this company. Yes. That is Mantec's argument, certainly. Why isn't it right? Sorry? Why isn't it correct? It's not correct because the panel made a decision, and that decision was to recommend the award to Mantec, but it was based on this misrepresentation about David Kendall Sperry at a time when Mantec knew that he wasn't even an employee. Well, the key word there is based on, and I guess the concern that we're raising in some of the questions is that this evidence seems to suggest that it's not based. It was not based on the idea that he personally would be doing the work. And what we're saying is that that was improperly decided on summary judgment, that the judge weighed the evidence and should have heard the testimony, even if it's a judge-made decision. Well, you know, if an issue like materiality is an issue for the court, you know, you normally don't have a trial to decide it. I mean, that's just materiality in all kinds of different contexts is decided by judges on a record. It becomes a question of law because it's a question for the court, and it's, you know, it's not a fact issue in the classic sense in most contexts when we're talking about materiality. I understand we don't have any case law that says that in this particular context, but we sure treat materiality that way in many, many, many other contexts. And I'm assuming that materiality will be a judge decision, as it is in other circuits, as having been decided in civil False Claims Act cases. But all we're saying is that there was disputed issues,  and allowed that evidence to come in with the motion still pending, but should have heard the evidence. Let me ask you a question, Mr. Kinship. So we've got a lot of testimony here from the various decision makers. Yes. And my question would, and some of it I suppose you might characterize as subjective after the fact, you know, justifying what they did as opposed to what they ordinarily do in this circumstance. Mr. Kinship, is there any reason to think that all this testimony about sort of the hindsight look at what happened in this case isn't what they always do? Is there any reason to suspect that to the extent that testimony here is focused on this event as opposed to their general policies, that there's any reason to doubt that that's what they would do in every case? Well, we don't know what they would have done had they known that Kendall Sperry was no longer employed by Mantec. What we're saying in our argument on the application of the materiality standard is exactly that, Judge Dow, that it was outcome-based, that it was based on the decisions made years later, the testimony rather of evaluators and decision makers who looked at the case from two, three, five years later, and that's exactly what A-plus Home Care says don't do. But when they say we don't care who the specific individual is, we care about the capability, is there any reason to think that that isn't what they do in every case? I don't know what they would do in every case. In this case there were unusual facts. You had an individual that they praised, that they identified as a key personnel, that they talked about in their summaries, and yet he wasn't even employed by Mantec. He could have been employed by ASCII for all they knew. But they made a, and that's what we're saying, is that summary judgment was improper. We're saying that the materiality standard was applied incorrectly because it looked at things that, the effects. Well, why isn't it fair to characterize Judge Watson's opinion in this way? He cites the correct standard. He does. And, yes, he does indeed look at what Mantec actually did in this case, but why isn't it fair to say that that was just the best evidence available to him of what an objective person would do? I mean, given the fact that he cites the right standard, I mean, certainly it's not inappropriate to consider what actually happened as evidence of what a reasonable company would do. Well, I think what Judge Watson didn't do was look at the bid itself. The papers require that the bidder have the technical and management capabilities. The decision of the evaluators was made upon, at least in our estimation, the credentials presented by Kendall Sperry, and that's how the decision was made. My time is up. I see, Your Honor. Thank you very much. May it please the Court. I'd like to turn directly to this issue of materiality, and I'd like to make two points that I think illuminate the fundamental issue here. The first is that under the False Claims Act, the alleged falsity must be material to the government's decision to pay. The relators in this case twist it, because this is a fraud in the inducement theory, and treat it as though the only issue is whether the alleged false statement was material to the decision to award the contract. And they argue that it's irrelevant, anything that may have happened thereafter. So are you saying then that their argument fails because we just look at whether it was a false statement that induced payment, and your client's already been retained, they're doing work, so of course they're going to get paid. The antecedent misrepresentations are irrelevant. Is that your argument? No, my point is, Your Honor, that the alleged misrepresentations were brought directly to the government's attention in real time when the brief filed in the GAO by ASCII in its protest was delivered to the contracting officer who testified, and this is undisputed, that she had an independent obligation to consider those allegations and determine whether that contract award should stand. And that she discussed it with others, and that they determined in real time. How long after the award determination was this again? This was within a couple of months of the award determination, Your Honor. And it was before performance had started. Let me ask this. So if I take this, take you into the language of the A-plus home care case. Yes, Your Honor. Here's the key language. A false statement or conduct is material, quote, if it has a natural tendency to influence or is capable of influencing the decision of the decision-making body to which it was addressed. And you're saying the decision is the decision to pay, not the decision to retain. That is correct, Your Honor. Okay. Now, in fraud and the inducement, the seminal case is U.S. ex-rel Marcus V. Hess, which involved bid reading. And the Supreme Court said that because there had been fraud in the procurement of the contract, which went undisclosed to the government, that the fraud didn't spend itself, that it continued through the presentment of the invoices and the payment. And that, of course, makes perfect sense. But in this case, even if you assume for the sake of argument that there were false statements in the award, it's brought to the government's attention, to the responsible decision-makers, and they say it doesn't make any difference. And Mantech advises the government, before it starts performance, that David Kendall Sperry is no longer available, that Kathleen Kiley will be the proposed manager, and the government specifically approves Ms. Kiley before Mantech commences performance. And under those circumstances, when Mantech is presenting an invoice, what's happened with David Kendall Sperry is completely and utterly immaterial. What about the evidence, I mean, not the evidence, the argument, that it's not whether it actually influenced the government in this particular case, but it's about the objective decision-maker? Judge Gibbons, thank you. That is the other issue I wish to address. And my response is precisely the one that you suggested earlier, which is this. It is true that the test is natural tendency and that it is the impact that would be had on a reasonable decision-maker. But in terms of determining that, where you've got actual evidence of what did happen, and no evidence that the government decision-makers were being unreasonable, then the best evidence you could possibly have of materiality is what the government actually did. And that's why the Seventh Circuit in Yannikopoulos decided what it did. Now, relators suggest that Yannikopoulos misapprehends the standard. And I suggest to you that that is not true. Yannikopoulos itself said it was applying the natural tendency standard. Yannikopoulos cited the earlier decision of the circuit in Rogan, R-O-G-A-N, which was a decision by Chief Judge Easterbrook, in which Judge Easterbrook explicitly made the point that if you have a government decision-maker who was asleep at the switch, that that, of course, wouldn't insulate the false claim. And I'm prepared to agree similarly that if you had a government decision-maker who was somehow corrupt, that wouldn't do it. But where you have government decision-makers who are reasonable, who don't miss, it's not like it was stuck in a pile of papers delivered to them, but where the issue is put squarely in front of them and they address it, then the best evidence of the natural tendency is what happens when the government is actually presented with that issue and decides it. And that's what Yannikopoulos held. That's what Judge Watson held. And, of course, we submit that that's what this Court should hold. I think those two issues really dispose of the entire case. I'm happy to address any questions the Court may have. But if it doesn't have any, I'm concluded. Thank you. Mr. Genshaw. Thank you, Your Honor. I want to distinguish Yannikopoulos, which was relied upon by Judge Watson in his opinion. That was a false certification case. So, in a sense, it really parallels what happened in our case. The case Yannikopoulos said the government's decision to pay when it had knowledge at the time it was asked to pay based on a certification wiped out the False Claims Act because the government already knew that in Yannikopoulos the EPA, the Economic Adjustment Clause was not in effect and the parties knew it and the government knew it. Here in this case, unlike Yannikopoulos, the decision to award was based, we say, in part on the credentials presented of David Kendall Sperry. The government didn't know that he was not even employed by Mantec at that time. That's the critical issue. You could very well be correct that the decision was based in part on his credentials, but yet be wrong in inferring that it was based, therefore, on the idea that he'd actually do the work. I mean, you have an awful lot of evidence you have to go against to get to that second, therefore. And what we're saying is that the standard imposed by A-plus Home Care means that you look at the statement at the time it's made, not based on decisions made years later, to the reasonable, objective decision maker. Well, but all that evidence is highly relevant to what is the test. It doesn't, I mean, that doesn't mean, it means that's not the ultimate test. It doesn't mean you don't consider all the evidence as going to the test. It's our position that it was improper on summary judgment. The judge should have heard the witnesses and made a decision based at trial on that issue. And I see my time is up, and I ask the court to reverse and send the case back for further proceedings. Thank you, Your Honors. All right. We appreciate the argument both of you have given, and we'll consider the case carefully.